UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WBL SPE III LLC,

                  Appellant,

        v.

JOEL K. SCHENFIELD and LIANE M.
SCHENFIELD,

                  Appellees.

_____

                24-CV-471-LJV
                DECISION & ORDER

On January 29, 2023, Joel and Liane Schenfield filed for bankruptcy under Chapter 13 of the United States Bankruptcy Code. *See* Case No. 23-10059 (Bankr. W.D.N.Y. 2023). As part of their Chapter 13 petition, the Schenfields identified a $67,000 loan held by a creditor named Southern Garden Services, LLC, that was secured by the Schenfields' home in Hamburg, New York. *See* Docket Item 4-3 at 21;[1] *see also id.* at 10 (identifying that same property in Hamburg, New York, as the Schenfields' home). The Schenfields' proposed Chapter 13 plan "call[ed] for the payment in full," with 5% interest, "of the Southern Garden Services, LLC[,] claim." Docket Item 4-7 ¶ 5.

On May 11, 2023, WBL SPE III, LLC ("SPE III"), the entity to which that loan had been assigned, objected to the confirmation of the Schenfields' Chapter 13 plan and filed an amended secured proof of claim. Docket Item 4-6; *see also* Docket Item 4-7 ¶ 6. SPE III argued that because it was actually owed $184,095.84 including interest, and

_____

[1] Docket citations are to Case No. 24-CV-471, and page numbers in docket citations refer to ECF pagination.

because the Schenfields' Chapter 13 plan "provide[d] that the total amount owed to [SPE III] [wa]s only $67,000.00," the Chapter 13 plan should be denied. *See* Docket Item 4-6 ¶¶ 11, 12.

The Schenfields moved to disallow SPE III's claim, arguing, among other things, that "the underlying debt" they owed—which carried a 49.99% interest rate—"[wa]s plainly usurious under New York State law." Docket Item 4-7 ¶¶ 13-14. SPE III replied that the claim was not invalid because the New Jersey choice-of-law provision in the loan agreement was enforceable and the interest rate was not usurious under New Jersey law. *See* Docket Item 4-8 at 8.

The bankruptcy court held that the New Jersey choice-of-law provision was unenforceable for two reasons: "[F]irst, New Jersey lack[ed] sufficient contacts with the transaction; and second, the [loan's] flagrant disregard of New York's Penal Law violate[d] public policy." Docket Item 1-2 at 3. Choosing to apply New York law instead, the bankruptcy court found the loan criminally usurious and disallowed SPE III's claim. *Id.* at 5-6.

SPE III then commenced this action by appealing the bankruptcy court's decision to this Court. *See* Docket Item 1; Docket Item 6. After the Schenfields responded, Docket Item 13, SPE III replied, Docket Item 14. SPE III later filed a letter with supplemental authority. Docket Item 15. For the reasons that follow, the bankruptcy court's decision is AFFIRMED.

## BACKGROUND[2]

Before addressing the appeal itself, the Court provides a brief overview of the transaction at issue based on loan documents produced by the parties in the proceedings below.  *See* Docket Item 4.

On March 19, 2019, Applied Sciences Group, Inc. ("Applied Sciences"), received a $67,000 loan from World Business Lenders, LLC ("WBL").  *See* Docket Item 4-8 at 19-24.  The Business Promissory Note and Security Agreement (the "note" or the "loan agreement") included an annual interest rate of 49.99%.[3]  *See id* at 19.  Its terms expressly stated that the loan was made to Applied Sciences "for business purposes only."  *Id.* at 20.

Joel Schenfield and Julie Dotton executed a Continuing Guaranty (the "guaranty") to secure the note.[4]  Docket Item 4-12 at 15-18.  Joel Schenfield, one of the appellees here, was an officer of Applied Sciences, *see* Docket Item 4-3 at 47; Dotton, a non-party to this appeal, was Applied Sciences' "President/CEO," *see* Docket Item 4-8 at 24.  As collateral, Joel Schenfield and his wife, Liane Schenfield, also executed a "Mortgage, Assignment of Leases and Rents[,] and Security Agreement" (the "mortgage") on their Hamburg, New York home.  Docket Item 4-8 at 27-59.

---

[2] The Court assumes the reader's familiarity with the factual background of this case, *see generally* Docket Item 4 (record on appeal), and the bankruptcy court's decision and order, Docket Item 1-2, and will refer to the facts only as necessary to explain its decision.

[3] Although the note did not expressly state an annual interest rate, the daily interest rate of 0.13695890411% specified in the loan agreement is equivalent to an annual interest rate of 49.99%.  *See* Docket Item 4-8 at 19, ¶ 2.

[4] Dotton's obligations as a guarantor of the note are not at issue in this appeal.

The note, guaranty, and mortgage each bore WBL's New Jersey address.  *See* Docket Item 4-8 at 19 (note); Docket Item 4-12 at 15 (guaranty); Docket Item 4-8 at 27 (mortgage).  The note and guaranty also included a choice-of-law clause selecting New Jersey law to govern any dispute.  *See* Docket Item 4-8 at 21 (note); Docket Item 4-12 at 17 (guaranty).  Through a series of transfers and assignments, SPE III came to hold the note and mortgage.[5]  *See* Docket Item 6 at 12.

Applied Sciences missed its first loan payment in April 2019.  *See id.*  After the Schenfields and Dotton failed to appear in an action brought in New York State Supreme Court, Erie County, by the noteholder, a default was entered against them on May 24, 2022.  Docket Item 4-8 at 11-13.

## **STANDARD OF REVIEW**

United States district courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" of bankruptcy courts, 28 U.S.C. § 158(a), so long as a notice of appeal is "filed with the bankruptcy clerk within 14 days after . . . ent[ry]," Fed. R. Bankr. P. 8002(a)(1); *see* 28 U.S.C. § 158(c)(2).  "A[ bankruptcy court] order . . . disallowing a claim is a final, appealable order."  *In re 114 Tenth Ave. Ass'n*, 441 B.R. 416, 424 (S.D.N.Y. 2010) (quoting *EDP Med. Comput. Sys., Inc. v. United States*, 480 F.3d 621, 626 (2d Cir. 2007)).

In its appellate capacity, a district court "review[s] the bankruptcy court's findings of fact for clear error and its legal determinations de novo."  *In re Anderson*, 884 F.3d

---

[5] The transfers and assignments resulted in the obligation that the Schenfields identified as belonging to Southern Garden Services, LLC, in their Chapter 13 documents as being held by SPE III.  *See* Docket Item 4-7 ¶ 5; Docket Item 6 at 12.

382, 387 (2d Cir. 2018); *see also In re W. 125th St. Liquors*, 615 B.R. 25, 29 (S.D.N.Y. 2020) ("When reviewing judgments rendered by bankruptcy courts, district courts act as appellate courts."). Choice of law is reviewed de novo. *See AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 131 (2d Cir. 2018). Findings of fact related to a choice-of-law determination, however, are reviewed only for clear error. *Id.*

On appeal, the district court "may 'affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree,' or it may remand with instructions for further proceedings." *Myer's Lawn Care Servs., Inc. v. Pryor*, 2024 WL 3716118, at *7 (E.D.N.Y. Aug. 6, 2024), *aff'd sub nom. In re Fragala*, 2025 WL 2857877 (2d Cir. Oct. 8, 2025) (summary order) (quoting *Heilbron v. Plaza*, 2021 WL 1062034, at *2 (E.D.N.Y. Mar. 19, 2021)).[6] "When an appellate court discerns that a [lower] court has failed to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the [lower] court to make the missing findings." *Pullman-Standard v. Swint*, 456 U.S. 273, 291 (1982). A remand also may be appropriate when a lower court "conducted an inadequate choice-of-law analysis." *Johnson v. Nextel Commc'ns. Inc.*, 780 F.3d 128, 146 n.19 (2d Cir. 2015). But if "de novo review . . . [applying] a proper choice-of-law analysis leads to [an] ineluctable conclusion[,] . . . [r]emand on the choice-of-law analysis is . . . unnecessary." *Id.*

---

[6] Although the quoted language was removed from the Federal Rules of Bankruptcy Procedure in 2014, "logic still compels the same conclusion with respect to the appellate powers of the District Court." *In re Bernard L. Madoff Inv. Sec., LLC*, 2016 WL 183492, at *8 n.14 (S.D.N.Y. Jan. 14, 2016), *aff'd* 697 F. App'x. 708 (2d Cir. 2017) (summary order) (quoting *In re Great Atl. & Pac. Tea Co.*, 2015 WL 6395967, at *2 n.1 (S.D.N.Y. Oct. 21, 2015)).

**DISCUSSION**

Under the Bankruptcy Code, "[a] claim . . . is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  When an objection to a claim is filed, "[t]he claim [is] prima facie valid" so long as "the claimant . . . allege[s] facts sufficient to support the claim."  *In re Brown*, 615 B.R. 725, 738 (Bankr. S.D.N.Y. 2020), *aff'd*, 2021 WL 510157 (S.D.N.Y. Feb. 11, 2021).  The objector then carries the burden to "produce evidence equal in force to the prima facie case which . . . would refute at least one of the allegations essential to the claim's legal sufficiency."  *Id.* at 738-39 (quoting *In re Scafuro*, 2013 WL 4776740, at *2 (Bankr. D. Vt. Sep. 4, 2013)).

The bankruptcy court held that the Schenfields met their burden, sustaining their objection to SPE III's claim because the loan transaction was "usurious and therefore void under New York law."  Docket Item 1-2 at 6.  The court based that finding on its conclusion that the New Jersey choice-of-law clause in the loan agreement was unenforceable because "New Jersey lack[ed] sufficient contacts with the transaction" and because "the [loan's] flagrant disregard of New York's Penal Law violate[d] public policy."  Docket Item 1-2 at 3.

SPE III challenges both conclusions and argues that the court erred in holding the New Jersey choice-of-law clause unenforceable.  *See* Docket Item 6 at 21.  First, SPE III argues that "there [was] no basis for the [bankruptcy court's] legal ruling that application of the New Jersey usury statute would violate New York public policy."  *Id.* at 24.  Second, SPE III argues that "the [b]ankruptcy [c]ourt applied the wrong test" in determining that New Jersey lacked sufficient contacts with the transaction and that New Jersey law therefore did not govern.  *Id.*  Arguing that New Jersey law should

apply, *id.* at 29, SPE III asks this Court to allow its claim and overrule the Schenfields' objection, *id.* at 8-10.

As mentioned above, this Court reviews the bankruptcy court's choice-of-law analysis de novo.  Federal courts typically apply the choice-of-law principles of the forum state.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  That rule extends to bankruptcy courts so long as the claims at issue do not implicate important questions of federal policy.  *See In re Gaston & Snow*, 243 F.3d 599, 605-07 (2d Cir. 2001).  Because the parties did not object to the bankruptcy court's application of New York choice-of-law principles, this Court will apply them here.  *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 (2d Cir. 2015) ("[T]he district court applied the substantive law of New York.  And, as neither party objects, we will do the same." (citation omitted)); *see also DarkPulse, Inc. v. Crown Bridge Partners LLC*, 2024 WL 3872725, at *2 (2d Cir. Aug. 19, 2024) (summary order).

In applying New York conflict principles, "the first step in a choice of law analysis is to determine whether an actual conflict exists between the laws of the jurisdictions involved."  *Forest Park Pictures v. Universal TV Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012).  The conflict in this case is clear.  New York deems criminally usurious any loan with an interest rate over 25% and principal under $2,500,000.  N.Y. Penal Law § 190.40; N.Y. Gen. Oblig. Law § 5-501(6)(b).  In New Jersey, on the other hand, a corporate loan is criminally usurious only if the interest rate exceeds 50%.  N.J. Stat. Ann. § 2C:21-19(a).  Because the 49.99% interest rate at issue in this case is criminally usurious in New York but not in New Jersey, there is an actual conflict, and the bankruptcy court correctly proceeded with a choice-of-law analysis under New York law.

"New York law is clear in cases involving a contract with an express choice-of-law provision:  Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction."  *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000).  Stated another way, "New York courts may refuse to enforce a choice-of-law clause only where (1) the parties' choice has no reasonable basis or (2) application of the chosen law would violate a fundamental public policy of another jurisdiction with materially greater interests in the dispute."  *Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 378 (S.D.N.Y. 2006).

The bankruptcy court held that the New Jersey choice-of-law provision was unenforceable because (1) applying New Jersey's usury law would violate a fundamental public policy of New York, and (2) New Jersey's relationship to the loan transaction was insufficient to create a reasonable basis for applying New Jersey law.  *See* Docket Item 1-2 at 3.  Because SPE III challenges both of those findings, the Court reviews each independently.

## A.    Public Policy

The bankruptcy court held that "the choice of any other law"—that is, any usury law other than New York usury law—"would . . . violate public policy."  Docket Item 1-2 at 4.  "To do otherwise," the court said, "would permit individuals by personal fiat to eviscerate the criminal statutes of [New York]."  *Id.*  SPE III argues that this holding simply "ignored the law."  Docket Item 6 at 17.  It asserts that because New York usury laws are primarily intended to apply to consumer loans, which are fundamentally distinct from corporate loans, *id.* at 21-22, the "application of New Jersey's usury laws to a loan

8

to a corporation (as is the case here) does not violate fundamental New York public policy." *Id.* at 17.

The Schenfields reply that usurious interest rates are "so offensive to [New York] public policy that they are criminalized even with respect to corporate borrowers." Docket Item 13 at 13. They point out that the loan at issue here "was relatively small," *id.* at 12, implicates the "personal liability" of Joel Schenfield, *id.* at 13 (emphasis omitted), and could result in foreclosure on the Schenfields' home, *id.* The Schenfields therefore argue that the New Jersey choice-of-law provision "was properly declared void because the interest rate in the agreement [was] contrary to New York's . . . fundamental public policy" against usurious loans. *Id.* at 6.

Courts applying New York conflicts principles will not enforce choice-of-law provisions that violate fundamental public policy. *Petróleos de Venez. S.A. v. MUFG Union Bank, N.A.*, 51 F.4th 456, 472 (2d Cir. 2022) (citing *Welsbach Elec. Corp. v. MasTec N.A., Inc.*, 7 N.Y.3d 624, 629, 859 N.E.2d 498, 500 (2006)). But the Second Circuit has cautioned "not to invoke [the] 'public policy exception' lightly; rather, it should be 'reserved for those foreign laws that are truly obnoxious.'" *United States v. Moseley*, 980 F.3d 9, 20 (2d Cir. 2020) (quoting *Brown & Brown, Inc. v. Johnson*, 25 N.Y.3d 364, 368, 34 N.E.3d 357, 360 (2015)). So the question here is whether permitting interest rates of up to fifty percent is "truly obnoxious" in a state that caps those rates at half that. And this Court agrees with the bankruptcy court that it is.

The parties disagree about whether the fundamental public policy served by New York's usury laws extends to the facts at issue here. But both sides rely extensively on the same case—the Second Circuit's decision in *Moseley*—to support their position.

9

That case involved an illegal payday-loan scheme which charged consumers exorbitant fees—sometimes amounting to annual interest rates of approximately 780%—and used foreign choice-of-law provisions in an attempt to evade New York usury law. *See Moseley*, 980 F.3d at 14-15.

In *Moseley*, the Second Circuit found that New York's usury law promoted an "important public policy." *Id.* at 21-22; *see also Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 110-11 (2d Cir. 2014) (recounting centuries-long history of New York's usury laws). "The purpose of usury laws, from time immemorial," the court said, "has been to protect desperately poor people from the consequences of their own desperation." *Moseley*, 980 F.3d at 21 (quoting *Schneider v. Phelps*, 41 N.Y.2d 238, 243, 359 N.E.2d 1361, 1365 (1977)). And the court identified a "longstanding public policy in New York in favor of enforcing its usury laws to protect those of its residents who enter into consumer debt contracts." *Id.* at 22. The court therefore found that New York public policy militated against enforcement of the contractual foreign choice-of-law provisions. *Id.*

SPE III insists that *Moseley* stands for the principle "that there is no fundamental public policy preventing application of out-of-state usury laws with respect to loans to corporations." Docket Item 14 at 14. In other words, SPE III says that while *Moseley* precludes using exorbitant interest rates permitted by a foreign jurisdiction to enforce a consumer loan in New York, the same is not true with respect to a corporate loan. *See id*. at 6-14. But *Moseley* did not say that.

*Moseley* held that the fundamental public policy served by New York usury law is the protection of unsophisticated borrowers from loans with usurious interest rates. 980

10

F.3d at 22.  And while *Moseley* observed that the public policy exception did not apply in a line of precedent where "the debtors were corporations," *id.*, the Second Court did not create a categorical rule requiring enforcement of foreign choice-of-law provisions for all corporate loans.  Instead, *Moseley* made clear that the central inquiry in invoking the public policy exception involves accounting for any power imbalance among parties to the loan transaction.

The New York Court of Appeals reinforced that conclusion in a case decided after *Moseley*.  In *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 179 N.E.3d 612 (2021), the Court of Appeals recounted the history of New York usury law and explicitly recognized the legislature's interest in protecting "[i]nsecure businesses" that are "an easy target" for "predatory lending."  37 N.Y.3d at 330, 179 N.E.3d at 619.  The Court of Appeals found that this interest is precisely what prompted the "enact[ment of] a new provision of the [p]enal [l]aw, which made loans charging more than 25% annual interest a felony in the second degree, and which . . . restored the defense of usury to corporations in civil actions . . . ."  *Id.* at 331, 179 N.E.3d at 619.  And as the Second Circuit did in *Moseley*, the Court of Appeals emphasized that usury laws protect those in "weak bargaining positions from being taken advantage of by those in much stronger bargaining positions."  *Id.* at 331-32, 179 N.E.3d at 620.  That history and analysis from New York's highest court discredit SPE III's categorical argument that New York usury laws do not protect a fundamental public policy interest in corporate loan transactions.

In fact, New York's statutory scheme recognizes that some corporations will inherently have less bargaining power than others when negotiating loan transactions: New York exempts loans over $2.5 million from its usury laws but still allows

corporations to invoke a criminal usury defense for loans less than that amount.  *See* N.Y. Gen. Oblig. Law § 5-501(6)(b).  That evidences the New York "legislature's judgment that borrowers of more than $2.5 million were 'capable of protecting their own interests' without the protection of the usury laws" while borrowers of less than that might not be.  *See Adar Bays, LLC*, 37 N.Y.3d at 331, 179 N.E.3d at 619-20 (quoting N.Y. Banking Dep't, Memorandum on Bill Before the Governor for Executive Action, Bill Jacket, L 1980, ch. 369, at 1-2 (1980)).  Therefore, SPE III's interpretation of *Moseley* misses the public policy interest embedded in deliberate decisions of the New York legislature.

What is more, the case before the Court today does not exclusively involve a corporate debtor.  As the Schenfields point out, "[t]he underlying bankruptcy case is a personal bankruptcy filed . . . by individual debtors to stop a mortgage foreclosure against their residence, including a debtor[, Liane Schenfield,] who . . . is not a borrower or guarantor of the note."  Docket Item 13 at 13 (emphasis omitted).  Of course, SPE III is correct that an individual who guarantees a corporate loan may only assert the same defenses as the corporation.  *See Carlone v. Lion & the Bull Films, Inc.*, 861 F. Supp. 2d 312, 322 n.4 (S.D.N.Y. 2012) ("As a guarantor . . . liability is derivative of [the corporation's] failure to perform, and [the guarantor] stand[s] in the shoes of the corporation." (internal quotation marks omitted)).  But Liane was not a guarantor of the note, *see* Docket Item 1-2 at 3-4; *see also* Docket Item 4-12 at 15-18, and, in any event, that is exactly what the Schenfields are doing here: invoking a defense of criminal usury which also would be available to Applied Sciences, *see* N.Y. Penal Law § 190.40.

12

SPE III's categorical argument—that corporate loans and consumer loans are always fundamentally different—thus fails to appreciate New York's public policy interest in protecting individual guarantors, mortgagors, and even small companies as distinguished from larger corporations. And here, the Court is not deciding whether to hold a corporation large or small liable; rather, it is deciding whether to hold the Schenfields personally liable for the loan to Applied Sciences. Those questions are different in kind and need not have the same answer.

That is why most of the district court cases that SPE III urges this Court to follow are distinguishable. *See DarkPulse, Inc. v. FirstFire Glob. Opportunities Fund, LLC*, 2023 WL 199196, at *12 (S.D.N.Y. Jan. 16, 2023) (enforcing foreign choice-of-law provision against corporate defendant, not individual guarantor); *Cyber Apps World, Inc. v. EMA Fin., LLC*, 645 F. Supp. 3d 281, 286-87 (S.D.N.Y. 2022) (same); *Parallax Health Scis., Inc. v. EMA Fin., LLC*, 2022 WL 1446521, at *11-12 (S.D.N.Y. Feb. 24, 2022) (same); *DarkPulse, Inc. v. Crown Bridge Partners, LLC*, 2026 WL 696787, at *8-9 (S.D.N.Y. Mar. 12, 2026) (same); *see also DarkPulse, Inc. v. Crown Bridge Partners LLC*, 2023 WL 6386006, at *4-5 (S.D.N.Y. Sep. 29, 2023), *vacated*, 2024 WL 3872725 (2d Cir. Aug. 19, 2024) (summary order) (vacating district court decision that failed to conduct independent choice-of-law analysis on case-specific facts).

Indeed, SPE III cites only one case, *Axos Bank v. 64-03 Realty LLC*, 2024 WL 1435971 (E.D.N.Y. Apr. 3, 2024), that enforced a foreign choice-of-law clause against individual guarantors. And this Court does not find that case persuasive.

To start, the court in *Axos Bank* evaluated the liability of the corporate debtor and individual guarantors together, and it did not address whether public policy

13

considerations might differ among the defendants. *See id.* at \*10-11. The court also relied primarily on language from *EMA Fin., LLC v. NFusz, Inc.*, 444 F. Supp. 3d 530 (S.D.N.Y. 2020), a case that did not involve an individual guarantor and that simply discounted "[t]he public policy [of] . . . prohibiting usurious transactions negotiated at arms-length *by sophisticated entities*." 444 F. Supp. 3d at 542 (emphasis added). But those are not the facts we have here. This Court therefore will not follow *Axos Bank* to enforce a foreign choice-of-law clause resulting in a usurious interest rate against an individual guarantor when there is no controlling precedent to suggest that result is required or even appropriate.

Besides, as the Schenfields correctly note, there is precedent to the contrary. Other courts have refused to enforce foreign choice-of-law clauses in cases involving individual guarantors when enforcing that clause would result in validating a usurious loan under New York law. *See, e.g.*, *Samson Lending LLC v. Greenfield Mgmt. LLC*, 80 Misc.3d 1023, 1028-32, 196 N.Y.S.3d 850, 854-57 (Sup. Ct. Ontario Cnty. 2023), *aff'd* 227 A.D.3d 1479, 208 N.Y.S.3d 786 (4th Dep't 2024) (refusing to enforce Virginia choice-of-law clause against corporation and individual guarantor); *Clever Ideas v. 999 Rest. Corp.*, 2007 WL 3234747, at \*1-2 (Sup. Ct. N.Y. Cnty. 2007) (same for Illinois choice-of-law clause). So the state of the law is unsettled at best.

What is settled is New York's strong interest in enforcing its usury laws to protect unsophisticated borrowers. *See Moseley*, 980 F.3d at 22; *Adar Bays, LLC*, 37 N.Y.3d at 331, 179 N.E.3d at 619-20. To be sure, that interest may be weaker in regulating loan transactions between corporations that have the wherewithal to negotiate a mutually beneficial agreement. *See Moseley*, 980 F.3d at 22; *Adar Bays, LLC*, 37 N.Y.3d at 330,

14

179 N.E.3d at 619.  But SPE III is incorrect when it suggests that precedent categorically prohibits the invocation of the public policy exception whenever the transaction involves a corporate loan.

Here, the Schenfields stand to be held personally liable—perhaps to lose their home—over a loan that was plainly usurious under New York law.  And as the bankruptcy court noted, Liane Schenfield was "neither a borrower nor a guarantor of the [n]ote."  Docket Item 1-2 at 4.  Moreover, nothing about that agreement suggests that it was negotiated between sophisticated parties on equal footing.  And the fact that the loan was made "for business purposes only," Docket 4-8 at 20, does not change that.

Holding the Schenfields liable here would flout New York's fundamental public policy against usurious loans.  Therefore, the bankruptcy court was correct when it found that New York's public policy precluded enforcement of the usurious New Jersey choice-of-law provision.

## B.    Reasonable Relationship

But even if SPE III were correct on its public policy argument, this Court still would affirm because the loan agreement had no reasonable relationship with New Jersey.

The bankruptcy court found that the disputed transaction had a "predominant and controlling connection with New York," Docket Item 1-2 at 3, and that such a "level of connection . . . compel[led] application of New York law," *id.* at 4.  SPE III argues that in reaching its conclusion, the bankruptcy court applied "the wrong [choice-of-law] test." Docket Item 6 at 24.  More specifically, SPE III contends that the "'center-of-gravity' or 'grouping of contacts'" choice-of-law test applied by the bankruptcy court "would apply

15

[only] in the absence of a contractual provision." *Id.* (emphasis omitted). Because the loan agreement here included a New Jersey choice-of-law clause, SPE III argues, the court should have applied a different test. *See id.*

In fact, both sides implicitly agree that the bankruptcy court applied the wrong test and explicitly agree on the correct test to be applied: For the provision to be enforceable, the chosen jurisdiction must have a "reasonable relationship" with the parties or the transaction. *See* Docket Item 6 at 25; Docket Item 13 at 14; *see also Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 641 (2d Cir. 2016) ("Generally, [New York] courts will enforce a choice-of-law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction." (alteration in original) (quoting *Welsbach Elec. Corp.*, 7 N.Y.3d at 629, 859 N.E.2d at 500)). But they disagree about whether the disputed loan transaction was insufficiently connected to New Jersey to meet the correct standard. *See* Docket Item 6 at 24-29; Docket Item 13 at 14-17. And even if the bankruptcy court used the incorrect test, this Court will affirm if applying the correct test "leads to" the same "ineluctable conclusion." *See Johnson*, 780 F.3d at 146 n.19.

The Schenfields say that the bankruptcy court's conclusion was correct given the numerous contacts between New York and the borrower (Applied Sciences), the lender (WBL), and the guarantors (Dutton and John Schenfield). *See* Docket Item 13 at 14. They assert that the evidentiary "record reflect[s] that New York is the only state that has a reasonable relationship with the transaction and the parties in this case." *Id.* at 16. SPE III disagrees. It says that the explicit language of the note as well as the

16

Schenfields' own Chapter 13 petition evidence a relationship with New Jersey sufficient to justify application of that state's law. *See* Docket Item 6 at 26-27.

The "reasonable relationship" standard does not require that the chosen jurisdiction have the greatest number of contacts with the parties or the transaction. *See NFusz, Inc.*, 444 F. Supp. 3d at 541. In applying the reasonable relationship standard, "courts will look at 'the location of the following factors: the parties' negotiation of the agreement; performance under the agreement, including where the loan payments were received; the parties' places of incorporation; the parties' principal place of business; and the property that is the subject of the transaction.'" *Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc.*, 2019 WL 1473090, at *3 (E.D.N.Y. Apr. 3, 2019) (quoting *Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 148 (S.D.N.Y. 2017)).

SPE III argues that because New Jersey was WBL's principal place of business when the loan was made, the connection between New Jersey and the loan was sufficient to apply New Jersey law. *See* Docket Item 6 at 26-28; Docket Item 4-8 at 8. And that fact alone can sometimes be sufficient to meet the reasonable relationship standard. *See Madden*, 237 F. Supp. 3d at 148; *JTH Tax LLC v. Kukla*, 2022 WL 1651074, at *6 (E.D.N.Y. Apr. 26, 2022). But "[a] party may not evade New York's usury laws . . . by merely nominally operating in another jurisdiction." *Madden*, 237 F. Supp. 3d at 148 (internal quotation marks omitted). And along the same lines, "a broad statement that a company's 'headquarters' are located in a state is not sufficient to meet the reasonable relationship requirement." *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, 2022 WL 1997207, at *18 (S.D.N.Y. June 6, 2022).

17

The fundamental question therefore is this:  When the transaction was consummated, was WBL sufficiently connected to New Jersey to meet the reasonable relationship standard?  The bankruptcy court relied on two pieces of evidence to find that it was not.

First, the bankruptcy court noted that WBL was organized as a New York LLC, not under the laws of New Jersey.  *See* Docket Item 1-2 at 3; *see also* Docket Item 4-11 at 11-12.  Second, the bankruptcy court noted that a screenshot of WBL's website from 2024 listed a New York postal box, not a New Jersey address.  *Id.*; *see also* Docket Item 4-14 at 6-10.  The bankruptcy court therefore concluded that the location of a WBL office in New Jersey was "insufficient to disregard the [transaction's] predominant and controlling connection with New York."  Docket Item 1-2 at 3.

SPE III argues that the bankruptcy court's finding was incorrect, and it says that the screenshot of WBL's website from 2024 does not accurately represent the company's operations when the loan was made.  *See* Docket Item 6 at 28-29.  Indeed, SPE III notes that the loan document itself called for Applied Sciences to make payment to WBL's New Jersey office, a fact that the Schenfields acknowledged in their proposed Chapter 13 plan.  *See* Docket Item 6 at 26-27; Docket Item 4-8 at 19, ¶ 1; Docket Item 4-4 at 3, 8 (proposed Chapter 13 plan).

In further support of its appeal, SPE III provides a list of sources that it says corroborate its assertion that New Jersey was WBL's principal place of business in 2019.  *See* Docket Item 6 at 27-28.  That list includes several other courts' noting New Jersey as WBL's principal place of business, as well as public press releases describing

the size of WBL's operation there. *Id.* But none of that material was provided to the bankruptcy court.

The Court agrees with the Schenfields that it would be improper for this Court to consider new evidence not presented to the bankruptcy court. In adjudicating a bankruptcy appeal, the district court "must 'limit [its] review to the record on appeal' and accordingly cannot take judicial notice of evidence that was not presented to the [lower] court." *In re Windstream Holdings, Inc.*, 634 F. Supp. 3d 99, 107 (S.D.N.Y. 2022), *aff'd*, 105 F.4th 488 (2d Cir. 2024) (first alteration in original) (quoting *Pullman v. Alpha Media Publ'g, Inc.*, 624 F. App'x 774, 779 (2d Cir. 2015) (summary order)). Without that new evidence, SPE III has offered nothing more than conclusory assertions that New Jersey was WBL's principal place of business when the loan was made. And there is no reason why SPE III could not have provided this evidence to the bankruptcy court, especially because all of it appears to have been publicly available long before the claim was filed. *See* Docket Item 6 at 27-28.[7]

Moreover, the Supreme Court defines "principal place of business" as "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010), and the fact that WBL listed a New Jersey address in its loan documents does not, on its own, meet that definition. That suggests only some WBL presence in New Jersey, not that New Jersey was the "nerve center" of WBL's operations. *Id.* at 81 (internal quotation marks

---

[7] Even if this Court were to take judicial notice of SPE III's newly presented evidence, the Court could consider only "the *fact* that press coverage [or] prior lawsuits . . . contained certain information, without regard to the truth of their contents." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

omitted).  And while not dispositive, the fact that WBL is organized under the laws of New York and listed a New York postal box on its website suggests that WBL may not have maintained its principal place of business in New Jersey.

Finally, other than SPE III's assertion about WBL's principal place of business, the other factors relevant to the "reasonable relationship" test point toward New York, not New Jersey.  *See Power Up Lending Grp., Ltd.*, 2019 WL 1473090, at *3 (quoting *Madden*, 237 F. Supp. 3d at 148); *see also DarkPulse, Inc.*, 2026 WL 696787, at *7-8 (refusing to find reasonable relationship existed between debtor and Nevada given insufficient contacts).  As the bankruptcy court found:

> The borrower was a New York corporation with a principal place of business in New York.  In the mortgage, the lender identified itself as a New York limited liability company.  Both of the guarantors are New York residents, as are both of the mortgagors whose homestead serves as collateral for the guaranty.  As indicated in the notarial acknowledgment, the mortgage was executed in New York.  Most significantly, the mortgage encumbers a parcel of New York real property.  Both the [n]ote and the guaranty [have New York forum selection clauses].

Docket Item 1-2 at 3.  SPE III does not challenge any of those factual findings, let alone suggest that they are clearly erroneous.

Given the bankruptcy court's factual findings and the absence of any evidence other than the loan documents connecting the transaction to New Jersey, this Court finds that there is no reasonable relationship with New Jersey that might justify enforcement of the choice-of-law provision.  "Without an effective choice-of-law provision, New York courts 'look to the center of gravity of a contract to determine choice of law.'"  *DarkPulse, Inc.*, 2026 WL 696787, at *7 (quoting *AEI Life LLC*, 892 F.3d at 135).  That is the very test that the bankruptcy court applied, and this Court finds no error in the bankruptcy court's application of that test.  *See* Docket Item 1-2 at 3.

20

In sum, although the bankruptcy court may not have applied the correct choice-of-law test in the first instance, that error was harmless because the correct analysis ultimately results in applying that same test and yields the same "ineluctable conclusion." *See Johnson*, 780 F.3d at 146 n.19.  Therefore, the bankruptcy court was correct in rejecting the loan's choice-of-law clause in light of New Jersey's minimal relationship with the loan transaction and in applying New York law instead.

## CONCLUSION

For the reasons stated above, the New Jersey choice-of-law clause is unenforceable and the loan is void as usurious under New York law.  *See* N.Y. Penal Law § 190.40.  The bankruptcy court's decision is AFFIRMED.

SO ORDERED.

Dated:   May 28, 2026
         Buffalo, New York

                                        */s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE

21